# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TABETHA O'CONNOR, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   NO. 3:13-cv-00229 |
| | )   JUDGE CRENSHAW |
| DEPUTY CHRISTOPHER | ) |
| CUNNINGHAM and SUMNER | ) |
| COUNTY, TENNESSEE, | ) |
| | |
|     Defendants. | |

## MEMORANDUM OPINION

Plaintiffs Tabetha and Ricky O'Connor brought this action on behalf of minor children, herein referred to as Jane Doe and John Doe, along with the non-minor party Shawn O'Connor. They filed this action against Defendants Sumner County, Tennessee ("Sumner County"), and Sumner County Deputy Sherriff Christopher Cunningham, both in his individual and official capacity, pursuant to 42 U.S.C. § 1983 and Tennessee state law, after Sheriff Cunningham allegedly violated the minor children and Shawn O'Connor's constitutional rights. Before the Court is Sumner County's motion for summary judgment (Doc. No. 23) and Plaintiffs' cross-motion for partial summary judgment. (Doc. No. 30.) Because the suit against an individual in his official capacity is the equivalent as a suit against the governmental entity employing him, Kentucky v. Graham, 473 U.S. 159, 166 (1985), the motion brought by Sumner County includes all claims involving Cunningham in his official capacity. For the following reasons, Sumner County's motion for summary judgment (Doc. No. 23) is **GRANTED**, and Plaintiffs' cross-motion for partial summary judgment (Doc. No. 30) is **DENIED**.

I. UNDISPUTED FACTS

On July 26, 2012, at approximately 3:00 a.m., Cunningham stopped thirteen-year-old Jane Doe, her sixteen-year-old boyfriend John Doe, and eighteen-year-old Shawn O'Connor on a street in Sumner County. (Doc. No. 23-7 at 1.) Jane Doe and John Doe were in a non-physical argument over pictures of herself that she sent to another boy. (Doc. No. 23-2 at 17.) Cunningham asked Jane Doe if John Doe assaulted her, which she denied. (Doc. No. 23-7 at 1.) He then left the boys in the front of the car and took Jane Doe to the back of his car and asked her to raise her shirt to her midriff so that he could check for bruises. (Id.) Cunningham then checked her pockets with his hands. (Id.) At approximately 3:15 a.m., Cunningham transported all three back to Jane Doe's residence. (Id.)

At the residence, Cunningham left the two boys unattended inside the patrol car and went inside the house with Jane Doe. (Id.) Cunningham told Jane Doe not to wake her parents. (Id.) Cunningham looked through Jane Doe's mother's cell phone because that is the phone on which Jane Doe took the pictures of herself, but she had already deleted the pictures she sent to the other boy. (Id.) Jane Doe cannot remember if she consented to the search of her mother's cell phone. (Doc. No. 23-2 at 28.) Cunningham asked Jane Doe to change into the bra and shirt she was wearing in the pictures she sent the other boy. (Id.) He left the room while she was changing, but did not shut the door all the way. (Id.) He took pictures of Jane Doe changing. (Doc. No. 23-5 at 4.)

Based on this conduct, the Sumner County Sheriff's Office charged Cunningham with seven policy violations: (1) the mission statement; (2) the code of ethics; (3) violation of law (unlawful photographs of a minor); (4) truthfulness; (5) on duty conduct; (6) conduct unbecoming a deputy; and (7) neglect of duty. (Doc. No. 23-12 at 5.) The Sumner County Sheriff's Office

terminated Cunningham's employment. (Doc. No. 23-13 at 3.) Ultimately, the State of Tennessee charged Cunningham with unlawful photography and violation of privacy and official misconduct, to which Cunningham pleaded guilty. (Doc. No. 23-10 at 8-9.)

In the seven years prior to the incident, Cunningham had numerous disciplinary actions taken against him, including: (1) verbal reprimand for tardiness; (2) written reprimand for reclassifying a trustee to lockdown and leaving his bill fold in pod; (3) written reprimand for tardiness; (4) verbal reprimand for failing to start and keep round sheets current during shift; (5) written reprimand for neglect of duty for failing [to] properly process a prisoner who was released early; (6) written counseling session for failing to operate a vehicle in a safe, conservative, and lawful manner; (7) written disciplinary record for overbearing conduct while performing duties and a counseling session for lecturing and scolding a resident upon arriving at a 9-1-1 call. (Doc. No. 32 at 10-12.) There were also civilian complaints against Cunningham that Sumner County dismissed, including: (1) complaint by a civilian for an improper stop and rudeness; (2) complaint by a civilian that Cunningham was rude to his high school daughter and another adult on the scene, and that Cunningham searched the high schooler's vehicle without proper permission; (3) complaint by a civilian claiming to have been pulled over without cause numerous times; and (4) complaint by a civilian that Cunningham searched the civilian's daughter's phone without a warrant. (Id. at 11.) Regarding the fourth one, Cunningham did not record the alleged-"consent," and the investigator suggested that Cunningham should not search cell phones on future stops "for a better reason than simple traffic violations." (Id. at 11-12.)

II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving

3

party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts . . . in light most favorable to the party opposing the motion." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial'" Matsushita, 475 U.S. at 587. "The mere existence of a scintilla of evidence in support of plaintiff's position, however, will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 479-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

III. ANALYSIS

Sumner County argues that it is entitled to summary judgment because there is no evidence that it was deliberately indifferent and was the moving force behind the deprivation of Plaintiffs' rights. (Doc. No. 24 at 16.) It further asks the Court to decline to retain supplemental jurisdiction on the state law claims. (Doc. No. 24 at 24.) Plaintiffs argue that there was an "obvious need to have policies and proper training with respect to dealing with juveniles and parental notification," and Sumner County had no such policies or training. (Doc. No. 31 at 16-17.) Plaintiffs also ask the Court to grant them summary judgment on the state law claim. (Doc. No. 31 at 17.)

A. MUNICIPAL LIABILITY

Sumner County asks for summary judgment on the municipal liability claim because there is no link between its training and the violation of Plaintiffs' rights. (Doc. No. 24 at 18.)

A municipality cannot be held liable under § 1983 on the basis of respondeat superior. See Thomas v. City of Chattanooga, 398 F.3d 426, 432-+33 (6th Cir. 2005) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). Under § 1983, a municipality can be held liable only if the plaintiff demonstrates that the alleged federal violation was a direct result of the city's official policy or custom. Burgess v. Fisher, 735 F.3d 462, 478 (6th Cir. 2013) (citing Monell, 436 U.S. at 693). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance of, or acquiescence in, federal rights violations. Burgess, 735 F.3d at 478.

Plaintiffs claim only that Sumner County had inadequate training or supervision. The inadequacy of police training can serve as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Slusher v. Carson, 540 F.3d 449, 457 (6th Cir. 2008). A plaintiff can establish deliberate indifference where a violation of her rights is highly predictable, or plainly obvious, consequence of a municipality's failure to train. Gregory v. City of Louisville, 444 F.3d 725, 752-53 (6th Cir. 2006). To plead deliberate indifference, the plaintiff may allege prior instances of unconstitutional conduct demonstrating that the governmental entity has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. Slusher, 540 F.3d at 457; Gregory, 444 F.3d at 752-53. In the alternative, where the constitutional violation

is not alleged to be part of a pattern of past misconduct, a plaintiff may plead that a supervisory official or municipality has essentially completely failed to train the police force or trained it so that it is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result. Hays v. Jefferson Cnty., Ky., 668 F.2d 869, 874 (6th Cir. 1982) (citing Leite v. City of Providence, 463 F. Supp. 585, 590-91 (D.R.I. 1978)).

Here, Plaintiffs claim deliberate indifference and that the municipality has essentially completely failed to train the police force. (Doc. No. 31 at 16-17.) The Court concludes that Sumner County was not on notice of a deficiency of training in a particular area. Nothing in any of the disciplinary reports shows that any of the prior complaints were made by minors or parents of minors. Additionally, even assuming the two complaints made by fathers of high school students involved minors, the Sumner County Sheriff's Department dismissed both complaints and there is no evidence that the dismissals of the complaints were improper. Finally, even if the Court were to assume that the Sumner County Sheriff's Department improperly dismissed the last complaint regarding the search of the cell phone, the investigator warned Cunningham not to search phones without more reason than just a traffic stop. This is not condoning the actions, but instead providing further training. There is no proof of deliberate indifference on the part of the Sumner County, nor is there proof of causation for Cunningham's constitutional violations in this case. The Court grants summary judgment to Sumner County on this claim.

There is also no proof that Sumner County completely failed to train its police force in dealing with juveniles and parental notification. Sergeant Jeff Puccini testified that every officer goes to the Tennessee Law Enforcement Training Academy (the "Academy") in order to get certified. (Doc. No. 23-5 at 6.) According to the Academy's syllabus, Cunningham took a class on

juvenile law. (Doc. No. 23-17 at 2.) Plaintiffs do not assert that this training was inadequate, put forth proof that other officers who took this class had problems with juveniles, or even offer evidence that Cunningham had a pattern of previous problems with juveniles.[1] See Russo v. City of Cincinnati, 953 F.2d 1036, 1047 (6th Cir. 1992) (denying summary judgment when plaintiffs asserted that the training defendant's officers received was inadequate). Even if the two or three citizen complaints did involve juveniles and did establish a pattern, those did not involve the specific constitutional violations in this case, and therefore are inadequate to establish a municipal liability claim. Connick v. Thompson, 563 U.S. 51, 62-63 (2011). Additionally, Plaintiffs do not present any authority that requires Sumner County to have a separate written policy regarding juveniles, and the Court does not know of any. Even if Sumner County unconstitutionally failed to have a policy, it is undisputed that Cunningham received the proper training regarding juveniles, and therefore Plaintiffs cannot prove that the lack of policy caused Plaintiffs' injuries. Therefore, the Court grants summary judgment to Sumner County on this claim.

B. STATE LAW CLAIM

In their response to Sumner County's motion for summary judgment, Plaintiffs moved for partial summary judgment on the state law claims. (Doc. No. 30.) Sumner County is correct that the dispositive motions deadline was February 13, 2015, and Plaintiffs did not move for summary judgment until March 17, 2015. (Doc. No. 20.) Plaintiffs did not file a motion to extend the dispositive motions deadline, nor did they offer good cause for filing their dispositive motion three weeks late. Therefore, the Court denies Plaintiffs' motion for summary judgment on the state law claim.

---

[1] While Cunningham had two or three citizen complaints that may have involved juveniles—although there is no proof that they did—two or three instances over the course of seven years does not constitute a pattern of wrongful behavior.

The Court declines to retain supplemental jurisdiction over the state law claim. The Court may decline to exercise supplemental jurisdiction over the state law claims if it dismisses "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (2006). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." Id. at 952 (quoting Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)). After weighing the relevant factors, the Court does not see any reason to depart from general rule, and therefore declines to retain supplemental jurisdiction over the state law claim.

Although this argument was not raised by Sumner County, the Court's decision is bolstered by the fact that it lacks subject matter jurisdiction over the state law claim. FED. R. CIV. P. 12(b)(1). The Sixth Circuit has ruled that a federal court may not grant relief under Tennessee Code Annotated Section 8-8-302 in a federal civil rights case. Siler v. Webber, 443 Fed. Appx. 50, 53 (6th Cir. Aug. 22, 2011). The Court may sua sponte dismiss a claim for lack of subject matter jurisdiction if the allegations are "implausible, attenuated, unsubstantial, devoid of merit, or no longer open to discussion." Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999). Because the Court's lack of subject matter jurisdiction over this claim is no longer open to discussion, it is an independent reason to dismiss this claim without prejudice.

IV. CONCLUSION

For the foregoing reasons, Sumner County's motion for summary judgment (Doc. No. 23) is **GRANTED**. Plaintiffs' motion for partial summary judgment (Doc. No. 30) is **DENIED**. The Court will file an accompanying order.

IT IS SO ORDERED.

                                                                                                                        _____
                                                              WAVERLY D. CRENSHAW, JR.
                                                              UNITED STATES DISTRICT JUDGE